IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| THEODORE THOMAS WAGNER, # 286910, | ) Civil Action No. 3:05-0372-GRA-JRM |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JON OZMINT, DIRECTOR SCDC; | ) |
| STAN BRUTT, WARDEN LIEBER CI; | ) |
| MR. NFN CSEAR, CLASSIFICATION SUP., | ) |
| LCI; | ) |
| MRS. L. CARYTON, INMATE GRIEVANCE, | ) |
| LCI; | ) |
| MRS. NFN WATFORD, CLASSIFICATION, | ) |
| LCI, ALL IN THEIR INDIVIDUAL AND | ) |
| OFFICIAL CAPACITIES, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |
| | ) |

Plaintiff, Theodore Thomas Wagner, filed this action on February 16, 2005.[1] At the time of the alleged incidents, Plaintiff was incarcerated at the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). He is currently incarcerated at the Ridgeland Correctional Institution of the SCDC. Defendants, SCDC Director Jon Ozmint ("Ozmint"); LCI Warden Stan Burtt ("Burtt"), Case Manager Cser ("Cser"), Caseworker Denise Watford ("Watford"), and Inmate Grievance Coordinator Lisa Carrington ("Carrington"),[2] filed a motion for summary judgment on June 14, 2005. Because Plaintiff is proceeding pro se, he was

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2]Plaintiff has misspelled a number of Defendants' names in the caption of his complaint. See Defendants' Memorandum in Support of Motion for Summary Judgment at 1.

advised on June 17, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a memorandum in opposition to summary judgment on July 25, 2005. He filed additional information on September 23, 2005.

## DISCUSSION

Plaintiff alleges that his Eighth Amendment rights have been violated because he was exposed to an unacceptable level of second-hand tobacco smoke while he was incarcerated at LCI. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff has not set forth any claims against Defendants; (2) Defendants are entitled to Eleventh Amendment immunity and are not persons as defined by 42 U.S.C. § 1983; (3) Plaintiff fails to allege fact sufficient to establish a violation of his Eighth Amendment rights; (4) Plaintiff fails to allege a violation of his right of access to the courts; (5) Plaintiff has failed to exhaust his administrative remedies; (6) Defendants are entitled to qualified immunity in their individual capacities; (7) Defendants Ozmint, Burtt, and Cser are not liable under the doctrine of respondeat superior; (8) this action is moot; and (9) this action should be dismissed pursuant to 28 U.S.C. § 1915(a) and (e) and should count as a strike.

1.     Eighth Amendment

Plaintiff alleges that his Eighth Amendment rights have been violated because he was housed with roommates who smoked and Defendants were deliberately indifferent to his need for a non-smoking living environment. Defendants contend that Plaintiff fails to establish an Eighth Amendment claim because he has not shown that he was exposed to unreasonably high

levels of secondhand smoke and he fails to show that Defendants were deliberately indifferent to his exposure to secondhand smoke.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Exposure to secondary ETS may state an Eighth Amendment claim, even if medical problems are not yet evident. Helling, 509 U.S. at 32. In Helling, the United States Supreme Court determined that an inmate has a right to be free from an unsafe, life-threatening condition even where no harm has yet resulted. To prove an Eighth Amendment violation, a plaintiff must

3

demonstrate two objective elements: (1) he is being exposed to unreasonably high levels of ETS, and (2) that the exposure violates current standards of decency. Id. at 36. Plaintiff must also prove a subjective element: that the defendants are deliberately indifferent to his exposure to this risk. Id.

Plaintiff has not shown that he was exposed to unreasonably high levels of ETS and that this violated currently standards of decency. See, e.g., Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996) (plaintiff who was housed with a smoking roommate failed to show the objective part of an ETS Eighth Amendment violation where his medical problem, asthma, was mild and the only evidence presented of a causal relationship between his condition and smoke was a few general news articles which indicated that smoke could aggravate asthmatic condition); Simmons v. Sager, 964 F. Supp. 210, 213 (W.D. Va. 1997) (plaintiff failed to show that his prison conditions exposed him to level of ETS that society would not tolerate where he did not demonstrate any specific health problems aggravated by his exposure to ETS).

Even if Plaintiff could establish the objective component of his Eighth Amendment claim, he fails to show that Defendants were deliberately indifferent to harm to him from ETS.[3] Defendants state that roommate assignments are made according to documented medical restrictions and that Wagner did not have a documented medical need for a non-smoking room. Cser and Watford Affs. Review of Plaintiff's medical records do not reveal he had any medical problem that would cause him to need a non-smoking room or that medical personnel wrote him

---

[3]Plaintiff has not specified what relief he seeks. See Complaint at 5. To the extent Plaintiff requests injunctive relief, his claims are moot as he has been transferred to another institution. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); and Ross v. Reed, 719 F.2d 689 (4th Cir. 1983).

a pass for a non-smoking room.[4]  None of the doctors or other medical personnel at LCI were named as defendants in this action.  Plaintiff requested to be transferred to a non-smoking unit (the Stono Unit) and was placed on the waiting list due to limited availability at that housing unit.  See Cser Aff. and Plaintiff's March 17, 2004 request to a staff member.  Additionally, Plaintiff admits

---

[4]In his opposition memorandum, Plaintiff alleges that his lack of a smoke-free environment violated his First Amendment and Fourteenth Amendment (equal protection) rights.  These claims were not included in the Complaint and are not properly before the Court.

Further, an equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity.  U.S. Const. amend XIV.  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest."  See Plyler v. Doe, 457 U.S. 202, 216-17 (1982).  When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Plaintiff has not shown that he is a member of a suspect class and he has not shown that he was treated differently from similarly-situated inmates or that such unequal treatment was the result of intentional discrimination.

Plaintiff also appears to allege that his First Amendment rights were violated.  The First Amendment provides:
> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend I.  Although the First Amendment may in certain instances protect the ability to express opinions about smoking, see, e.g., Smith v. Martin, 819 F.Supp. 733 (N.D.Ill. 1992) (inhalation of second-hand smoke is a matter of public concern and, thus, public employees' speech on same is protected by First Amendment), Plaintiff has presented nothing to show that the First Amendment creates an entitlement to a smoke-free environment.

5

that before his transfer from LCI, he was assigned a non-smoking roommate. Plaintiff's Opposition Memorandum at 28-29.[5]

    2.    <u>Grievances</u>

Plaintiff appears to allege a claim concerning the grievance process. In his opposition memorandum he complains that Carrington told him that cell assignments were a non-grievable issue.

The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. <u>See</u> <u>Brown v. Dodson</u>, 863 F. Supp. 284 (W.D.Va. 1994). Additionally, allegations that defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

    3.    <u>Access to the Courts</u>

Plaintiff alleges that it has taken him seven months to research information on ETS because SCDC knowingly and intentionally restricts inmate access to the courts. Complaint at 5.

---

[5]In his opposition memorandum, Plaintiff appears to be alleging claims against officials at Ridgeland Correctional Institution. None of these officials are parties to this action.

Defendants argue that Plaintiff's claim fails because he did not claim that he suffered any actual injury from the alleged delay.

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the <u>right of access to the courts</u> not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1316 (4th Cir. 1996); <u>see also</u> <u>White v. White</u>, 886 F.2d 721, 723-24 (4th Cir. 1989); <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382-85 (4th Cir. 1993), <u>cert. denied</u>, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. <u>Lewis</u>, 518 U.S. at 353-54. Plaintiff fails to establish a claim concerning access to the Courts because he did not allege any actual injury because of any delay in his being able to research information about ETS. With his opposition memorandum, Plaintiff has submitted a copy of grievance number LCI-0781-05, in which prison officials state that Plaintiff was allowed to go to the law library approximately twenty-two times from January 1 to May 11, 2005.

4.        Respondeat Superior

Defendants Ozmint, Burtt, and Cser argue that they cannot be held liable under a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Ozmint, Burtt, or Cser were personally responsible for the alleged incidents. Further, Plaintiff has not shown that Defendants Ozmint, Burtt, or Cser were deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendants Ozmint, Burtt and Cser are liable under a theory of respondeat superior or supervisory liability.

5.        Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted,

damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Id.</u> at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 24) be granted.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

December 14, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201